**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE**

Civil Case No. 08-cv-01079-LTB

LISA DWERNYCHUCK,

    Plaintiff,

v.

KIMBERLY-CLARK GLOBAL SALES, L.L.C.,

    Defendant.

_____

**ORDER**
_____

    This employment discrimination case is before me on Defendant, Kimberly-Clark Global Sales, Inc.'s ("Kimberly-Clark"), Motion for Summary Judgment [**Docket # 33**], and Plaintiff, Lisa Dwernychuck's, Response [**Docket # 42**], and Defendant's Reply [**Docket # 43**]. Oral argument would not materially assist the determination of this motion. After consideration of the motion, the papers, and the case file, and for the reasons stated below, I DENY Defendant's Motion for Summary Judgment [**Docket # 33**].

**I. BACKGROUND**

    The relevant alleged facts are as follows. Plaintiff began working for Kimberly-Clark in December 1987. In April 2000, Plaintiff was transferred to Denver and promoted to the position of Market Development Manager. Plaintiff reported to a District Manager who, in turn, reported to the Regional Sales Director for the Western Region. In January 2004, William Cates was named District Manager. In May or June 2006, Brian McCool was named Regional Sales Director.

In November 2004, Plaintiff filed a complaint against Cates alleging Cates made inappropriate sexual comments towards her, was aggressive and belittling towards her and used profanity, and otherwise treated her less favorably than male employees.  Plaintiff also alleged Cates refused to provide her assistance—despite providing assistance to the male employees—and required her to perform to a standard higher than that set for the male employees.  Plaintiff alleged she would receive angry phone calls from Cates if her work was not up to the higher standard, but the male employees were allowed to do their work late without criticism.  Plaintiff also reported that Cates had sexually harassed another female employee. Although human resources discussed the complaint with Cates, Cates continued the complained-of behaviors.  Plaintiff filed additional complaints against Cates in May 2006 and October 2006—three weeks before she was terminated.

Prior to Cates's tenure as Regional Manager—and prior to Plaintiff filing a complaint against Cates—Plaintiff received performance evaluations of "Meets Position Expectations" each year—an evaluation Plaintiff considered to be very good.  When Cates began filling out Plaintiff's performance reviews in 2005, however, the reviews became unfavorable.  Cates supervised eight people, including Plaintiff.  Although another woman—Erika Smythe—previously worked in Cates's group, Cates told Plaintiff no females would be considered to replace Smythe.  At the time of her dismissal, Plaintiff was the only woman in the sales group supervised by Cates.

As part of Plaintiff's job responsibilities, she was required to meet with current and potential customers.  Kimberly-Clark required Plaintiff to track her sales activity in the company's Focus Account Calling Tool ("FACT") system.  Part of Plaintiff's compensation was

based on her entries in the FACT system. On October 30, 2006, Kimberly-Clark told Plaintiff she was being dismissed for entering incorrect information into FACT. Specifically, Plaintiff improperly entered phone contacts into the system—despite the requirement that FACT entries relate to face-to-face contacts only—and Plaintiff entered information on FACT showing inaccurate contact dates. Although Plaintiff's entries were inaccurate, they were entered in accordance with common practice across Kimberly-Clark's sales teams, including within Cates's group. None of the males on Cates's team, however, were investigated or penalized for their inaccurate FACT entries. Instead, the males on Cates's team were advised to correct their entries whenever an entry was determined by Cates to be inaccurate.

Plaintiff filed a complaint in Denver District Court—subsequently removed to this Court on federal question jurisdiction on May 21, 2008 [**Docket # 1**]. Although Plaintiff's claims for relief are not set out as such, Plaintiff appears to claim gender discrimination in termination and retaliation, in violation of Title VII. Kimberly-Clark now moves for summary judgment on Plaintiff's claims.

## II. STANDARD OF REVIEW

The purpose of a summary judgment motion is to assess whether trial is necessary. *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). If a reasonable juror could not return a verdict for the non-moving party, summary judgment is proper and there is no need for a trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is not proper if—viewing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor—a reasonable jury could return a verdict for the non-moving party. *Mares v. ConAgra Poultry Co., Inc.*, 971 F.2d 492, 494 (10th Cir. 1992).

In a motion for summary judgment, the moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, *supra*, 477 U.S. at 323 (quoting FED. R. CIV. P. 56(c)). If the moving party does not bear the burden of persuasion at trial, it may satisfy this responsibility by identifying a lack of evidence for the non-movant on an essential element of the non-movant's claim. *Adamson v. Multi Community Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008).

If this burden is met, then the non-moving party has the burden of showing there are genuine issues of material fact to be determined. *See id.* at 322. It is not enough that the evidence be merely colorable; the non-moving party must come forward with specific facts showing a genuine issue for trial. *See id.*; *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). I shall grant summary judgment, therefore, only if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Lucas v. Mountain States Tel. & Tel.*, 909 F.2d 419, 420 (10th Cir. 1990); FED. R. CIV. P. 56(c).

In a motion for summary judgment, I view the evidence "through the prism of the substantive evidentiary burden." *Liberty Lobby*, *supra*, 477 U.S. at 254. The inquiry is based on "the quality and quantity of evidence required by the governing law" and "the criteria governing

what evidence would enable the jury to find for either the plaintiff or the defendant." *Id*. Accordingly, in this employment discrimination case, Plaintiff must show material facts in dispute by a preponderance of the evidence in order to defeat Kimberly-Clark's motion for summary judgment. Plaintiff meets this burden if she sets forth evidence that—if believed by the ultimate factfinder—makes the question of Kimberly-Clark's wrongdoing more likely than not.

### III. ANALYSIS—TERMINATION

When a plaintiff relies on circumstantial evidence to prove employment discrimination, the Court applies the three-step burden shifting framework set forth in *McDonnell Douglas* and its progeny. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800–07 (1973); *Adamson*, 514 F.3d at 1145; *Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005). At the first step, the plaintiff must establish a *prima facie* case of a prohibited employment action. *Plotke*, 405 F.3d at 1099. In order to establish a *prima facie* case, a plaintiff must show: (1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) "actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a discriminatory criteria under the Act." *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 576 (1978) (quotations omitted). "The facts necessarily will vary in Title VII cases, and the specification . . . of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations." *McDonnell Douglas*, 411 U.S. at 802 n.13; *see also Plotke*, 405 F.3d at 1099 (holding the appropriate *prima facie* burden depends "on the context of the claim and the nature of the adverse employment action

alleged"); *Hysten v. Burlington N. and Santa Fe Ry. Co.*, 296 F.3d 1177, 1181–82 (10th Cir. 2002).

If the plaintiff makes out a *prima facie* case, the burden then shifts to the employer to state a legitimate nondiscriminatory reason for the action. *Id*. This burden is "exceedingly light." *Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1173 (10th Cir. 2007). If the employer meets this burden, then summary judgment is warranted unless the employee can show the existence of a genuine issue of material fact as to whether the proffered reasons are pretextual. *See Plotke*, 405 F.3d at 1099. To show pretext at this step, the plaintiff must point to evidence demonstrating the employer's proffered reasons are "so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude the reasons [a]re unworthy of belief." *Stover v. Martinez*, 382 F.3d 1064, 1076 (10th Cir. 2004).

Kimberly-Clark initially argues Plaintiff is unable to make her *prima facie* case. It is not disputed that Plaintiff is a member of a protected class and that her employment was terminated. Accordingly, in order to make her *prima facie* case, Plaintiff need only proffer evidence "from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a discriminatory criteria under the Act." *Furnco,* 438 U.S. at 576. Plaintiff's evidence—viewed in the light most favorable to her as the non-moving party and drawing all reasonable inferences in her favor—shows: ninety percent of the sales team made inaccurate FACT entries; male members of Cates's team were advised to correct their entries whenever an entry was determined by Cates to be inaccurate; Plaintiff was the only female on Cates's team; Plaintiff was the only member of Cates's team who was investigated for inaccurate FACT entries; and Plaintiff was the only member of Cates's team who was terminated for

inaccurate FACT entries.  This evidence is sufficient to show Plaintiff was terminated for reasons related to her gender.

Kimberly-Clark proffers evidence of Plaintiff's inaccurate FACT entries to show a legitimate nondiscriminatory reason for Plaintiff's termination.  This evidence is sufficient to put Plaintiff to her burden of pointing to evidence showing Kimberly-Clark's proffered reasons are "so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude the reasons [a]re unworthy of belief."  *See Montes*, 497 F.3d at 1173; *Stover*, 382 F.3d at 1076.

Although Kimberly-Clark proffers evidence showing McCool made the ultimate decision to terminate Plaintiff because of Plaintiff's FACT entries, Plaintiff's evidence shows the decision was made jointly by both McCool and Cates and that McCool's decision—to the extent it was independent from that of Cates—was based on the fruits of Cates's biased investigation and reporting.  Similarly, although Kimberly-Clark proffers evidence showing a male sales representative was terminated by McCool in late 2008 for making false FACT entries, there is no evidence showing this male associate—whose termination, nearly two years after Plaintiff's and under circumstances suggesting intentional fraud, does not appear sufficiently similar to Plaintiff's to warrant summary judgment in any regard—worked in Cates's team.  In light of the evidence presented by Plaintiff showing the FACT requirements were understood by the sales team—including Cates—to be flexible, the rules were selectively enforced against her, and that she was the only person in Cates's team terminated for violating these rules, Plaintiff meets her burden here.  *See Spulak v. K Mart Corp.*, 894 F.2d 1150, 1155 (10th Cir. 1990) (holding when a plaintiff proffers evidence showing policies were selectively enforced, such evidence is "clearly

sufficient" to create a genuine question of material fact as to pretext). Accordingly, Kimberly-Clark's motion for summary judgment on Plaintiff's termination claim is denied.

## IV. ANALYSIS—RETALIATION

Plaintiff claims Kimberly-Clark—and, more specifically, Cates—retaliated against her because she filed three gender-related complaints from November 2004 through October 2006. To establish a *prima facie* case of retaliation, Plaintiff must show (1) she engaged in a protected activity, (2) she was subjected to an employment action that a reasonable employee would have found materially adverse, and (3) there was a causal connection between the protected activity and the adverse employment action. *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006); *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1262–63 (10th Cir. 1998).

It is not disputed that Plaintiff engaged in a protected activity and she was subjected to an employment action that a reasonable employee would have found materially adverse. Addressing the causation element, Plaintiff proffers evidence showing she filed multiple complaints against Cates alleging sex discrimination. Although the first complaint was filed almost two years before Plaintiff was eventually terminated, Plaintiff's evidence—viewed in the light most favorable to her as the non-moving party and drawing all reasonable inferences in her favor—is sufficient to show a pattern of adverse actions taken by Cates following her initial complaint and continuing up until her eventual termination. This is sufficient to show causation for purposes of summary judgment. *See Steele v. Kroenke Sports Enters., L.L.C.*, 264 F. App'x 735, 746 (10th Cir. 2008) (holding the causation element to be satisfied where—as here—the later-occurring actions are part of a pattern of adverse actions commencing at a more proximate

date). Moreover, as Plaintiff filed a complaint only three weeks before she was actually fired, this is additional evidence of causation. *See Burrus v. United Tel. Co. of Kansas, Inc.*, 683 F.2d 339, 343 (10th Cir. 1982) ("The causal connection may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action."). Accordingly, Plaintiff adequately makes out a *prima facie* case of retaliation.

Once a plaintiff makes a *prima facie* showing, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *See McDonnell Douglas*, *supra*, 411 U.S. at 802. Again, Kimberly-Clark proffers Plaintiff's inaccurate FACT entries. This is sufficient for Kimberly-Clark to meets its burden, and to put Plaintiff to her burden of proffering evidence showing Kimberly-Clark's asserted reasons are pretextual. *See O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1252 (10th Cir. 2001). As in Plaintiff's termination claim, the evidence presented by Plaintiff—evidence showing the FACT requirements were understood by the sales team to be flexible, the rules were selectively enforced against her, and that she was the only person terminated for violating these rules—is sufficient for Plaintiff to meet her burden here. *See Spulak*, 894 F.2d at 1155. Accordingly, Kimberly-Clark's motion for summary judgment on Plaintiff's retaliation claim is likewise denied.

## V.  CONCLUSION

Plaintiff provides sufficient evidence of pretext for discrimination on her Title VII termination and retaliation claims to raise a genuine issue of material fact.  Accordingly, Defendant's Motion for Summary Judgment [**Docket # 33**] is DENIED.

Dated: May   28  , 2009.

                                             BY THE COURT:

                                         s/Lewis T. Babcock
                                      Lewis T. Babcock, Judge